FILED
2011 Jun-14  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **KELLI M. GARRARD,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CV-10-BE-1165-M** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of** | ) | |
| **Social Security** | ) | |
| | ) | |
| **Defendant**. | ) | |
| | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On May 5, 2006, the claimant, Kelli M. Garrard, applied for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The claimant alleged disability beginning on May 5, 2006 because of back pain and anxiety. The Commissioner denied the claim. The claimant filed a timely request for a hearing before an Administrative Law Judge, who held a hearing on August 13, 2008. In a decision dated January 9, 2009, the ALJ found that the claimant was not disabled as defined by the Act and was not eligible for benefits. The Appeals Council denied the claimant's requests for review twice after she submitted new evidence. The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court AFFIRMS the Commissioner's decision.

1

## II. ISSUES

The claimant presents the following issues for review: (1) whether the Appeals Council erred in denying review because of new evidence; (2) whether the ALJ improperly failed to order a psychological consultative evaluation; (3) whether the ALJ inappropriately dismissed vocational expert Mr. Scoggins's opinion; (4) whether the ALJ's hypotheticals to vocational expert Dr. Kestler were erroneous as a matter of law; and (5) whether the ALJ incorrectly discredited the claimant's testimony about pain.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if he applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2006); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that substantial evidence supports. Substantial evidence is more than a mere scintilla. It means evidence that a reasonable mind could accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court not only must look to the parts of the record that support the decision of the ALJ but also must view the record

2

in its entirety and take account of evidence that detracts from the evidence upon which the ALJ

relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

A person is entitled to disability benefits when the person cannot "engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). To

make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920

(2010).

If the ALJ denies a claim and the claimant presents new evidence to the Appeals Council,

a district court must consider that evidence in reviewing the ALJ's decision. *Ingram v. Comm'r*

*of Soc. Sec. Admin.*, 496 F.3d 1253, 1262. (11th Cir. 2007). The Appeals Council need not

review an ALJ decision unless new evidence presents a reason to doubt that decision such that

substantial evidence no longer supports it. 20 C.F.R. § 404.970(b) (2010); *see Werner v. Comm'r*

*of Soc. Sec.*, No 10-13228, 2011 WL 989824, at *2 (11th Cir. Mar. 11, 2011).

The claimant has the burden of proving all elements of a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). Listing 12.04 requires proof of a combination of numerous symptoms to satisfy its severity requirement. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.04 (2010). A claimant must prove, among other things, that her IQ is between 60 and 70 to satisfy Listing 12.05(C). 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05(C) (2010).

If substantial evidence already supports the ALJ's decision, he does not commit an error if he fails to order a consultative evaluation. *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988). Also, an ALJ must consider the opinion of a vocational expert if no evidence contradicts his opinion. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). When posing hypothetical questions to a vocational expert, the ALJ must comprehensively describe the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Although an ALJ must give treating physicians' opinions substantial weight, an ALJ may discount their conclusions if objective medical evidence does not accompany those conclusions. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d, 1155, 1159 (11th Cir. 2004). The Eleventh Circuit pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of that condition or (3) a reasonable expectation that the condition is severe. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Under this standard, an ALJ must also clearly articulate reasons supported by substantial evidence if he discredits a claimant's testimony. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

### V. FACTS

The claimant was twenty-four years old at the time of the administrative hearing and reached the ninth grade level in school. (R. 31, 56). She worked for very short periods of time

4

and earned about $1000 from 2001 until 2006 as a store clerk, fast food worker, and babysitter. (R. 57-59, 130). Claimant alleges that her disability began on May 5, 2006. (R. 31). She claims that she is unable to work because of lower back pain, anxiety, and depression. (R. 130-31). In her initial disability filing, she also stated that she "did not want to work." (R. 130). Claimant is currently unemployed and lives with her parents. (R. 54-55).

*Evidence of Pain and Depression Presented to the ALJ*

On February 28, 2005, a driver crashed into claimant's car at high speed. The claimant went to the Gadsden Regional Medical Center ("GRM") emergency room, where x-rays showed no major fractures or acute pathology but revealed minimal lumbar levoscoliosis, or side-to-side curvature of the spine. The claimant suffered severe back, side, and neck pain immediately after the wreck and reported persistent, sharp, and radiating pain eight months later at GRM. (R. 180-83).

On April 5, 2005, the claimant visited her routine physician, Dr. Ruiz. The doctor noted chronic lower back pain and prescribed Lortab, Robaxin, and Lyrica. He also ordered an MRI, which showed mild disc bulges but no severe problems. Dr. Ruiz explained that he did not manage chronic pain cases and referred the claimant to Dr. Johnston. (R. 193).

Dr. Johnston, an internist, has treated the claimant on thirty-three occasions since May 2006. The claimant complained of pain on one visit to Quality of Life Health Services four days after her initial visit to Dr. Johnston, but afterward she returned to him consistently. (R. 200). Dr. Johnston eventually increased her prescription regimen to include Klonopin, and he prescribed the anti-depressant Lexapro upon diagnosing her with generalized anxiety disorder ("GAD"). (R. 236-39). The claimant consistently reported to Dr. Johnston that this medicine controlled her

depression symptoms well and mitigated her pain from ten to four points on a ten point scale. (R. 222).

The Commissioner used two consultative examiners to learn more about claimant's conditions. On July 29, 2006, Dr. John Moody, an internist, diagnosed lower back pain and estimated that claimant probably had some disk disease. Dr. Moody noted that his statement was inferential because he only had the MRI of April 5, 2005 and needed more imaging evidence to rule conclusively. (R. 204). In fact, Dr. Johnston ordered an MRI on August 7, 2006, but the radiologist noted only "very mild" lumbar disc bulges with no herniation, stenosis, or lesions. (R. 239). A psychiatrist named Dr. Frank Nuckols assisted the ALJ in completing the Psychatric Review Technique Form ("PRTF") and found no medically determinable impairments. (R. 206).

The claimant finally visited Mr. Gary Scoggins, her own expert, who administered a battery of occupational tests. (R. 240-43). He concluded that her limitations would prevent her from being able to find work at the local, state, or national level. On his evaluation, Mr. Scoggins listed his qualifications as "MA, CRC, CFCE." (R. 240).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for benefits, she requested a hearing before an ALJ. (R. 31). At the hearing on August 13, 2008, the claimant described the car crash as the cause of her pain. (R. 44). The ALJ reviewed Dr. Ruiz's examinations, the referral to Dr. Johnston, and the medical record in general. He reviewed Dr. Johnston's diagnoses and treatment and asked the claimant pointed questions about her visits with him. (R. 47-49). The ALJ then inquired about claimant's daily life and past employment. He discussed her pain levels with medication, pain levels without, and side effects while on that medication. She reported a

pain level of six out of ten with her medication, ten out of ten with it, and stated that the side effects included drowsiness and occasional nausea. (R. 60-61).

Dr. Mary Howe Kestler, a vocational expert, testified about claimant's current job abilities amid three hypothetical situations posed by the ALJ. First, he assumed that she had a sedentary residual functional capacity ("RFC"), and Dr. Kestler responded that work requiring only this RFC existed in the national economy. Second, he assumed that she had a normal mental RFC and Dr. Kestler answered that she could perform those jobs if that assumption held. Third, he assumed that she suffered from moderately severe pain, and she concluded that claimant would be disabled from working altogether if she did suffer from that level of pain. (R. 61-63).

*The ALJ Decision*

On January 9, 2009, the ALJ issued a decision that the claimant was not disabled under the Act. He began by finding that the claimant was not engaged in substantial gainful activity. He next found that the claimant proved two severe impairments: chronic back pain and GAD. He relied on the PRTF evaluation process set forth in 20 C.F.R. § 416.920a and on Dr. Johnston's diagnosis of GAD to reach this conclusion. The claimant did not argue that she satisfied a listing, and the ALJ found that she did not meet or equal any listing. (R. 32).

The ALJ then ruled that claimant's physical RFC was sedentary and that her mental RFC included the ability to process instructions, to respond appropriately to those in her workplace, and to handle normal work pressures. He reached his mental RFC determination by according weight to the opinions of Dr. Johnston and Dr. Moody and dismissing that of Mr. Scoggins. The ALJ found that Mr. Scoggins's credentials were lacking insofar as the record reflected and treated him as an "other source," as opposed to a medical examiner, under 20 C.F.R. §

7

416.913(d). (R. 35-36).

The ALJ next discredited claimant's subjective testimony about her pain symptoms because of countervailing objective evidence like the MRI results, her statements to Dr. Johnston that the medicine alleviated the pain considerably, and her statement that she stopped working because "she did not want to work" in her initial disability filing. (R. 130). He found that she had no past relevant work history and determined that she could perform jobs that existed in significant numbers in the national economy. He concluded that she was not entitled to benefits because she was not disabled under the Act. (R. 37-38).

*New Evidence Submitted to the Appeals Council*

The claimant then hired new counsel, requested review by the Appeals Council and timely submitted numerous additional pieces of evidence. This supplemental evidence included medical records dating from 1983 to 2010. The Appeals Council first denied review on February 5, 2010 after admitting seventeen new exhibits. On March 10, 2010, it vacated that order, admitted three new exhibits to the record, and denied the claimant's request a second time. (R. 1-9). This evidence indicated back pain resembling the pain apparent from the ALJ's record. *See, e.g.,* (R. 421); (R. 476). The evidence also reflected anxiety symptoms consistent with Dr. Johnston's diagnosis of GAD. *See, e.g.,* (R. 383) (very irritable and sleep deprived); (R. 509) (GAD per Johnston); (R. 520) (vague suicidal thoughts).

On March 2, 2009, Dr. David Wilson, claimant's new consultative psychologist, determined that she was so depressed that she could not maintain employment. He noted the claimant's detailed medical history, but he relied on three tests of his own to make his finding. First, the doctor conversed generally with the claimant about her daily activities and heard

8

anecdotes about her bouts with depression. Second, he determined that her Verbal IQ was 87, Performance IQ was 84, and Full Scale IQ was 85. Dr. Wilson then conducted the multi-axial psychological test on the claimant. Her principal disorders included GAD with panic attacks and dysthymia and post traumatic stress disorder. She had low average intelligence, back and neck problems, a history of severe family dysfunction, and a Global Assessment of Functioning score of 45. (R. 552-59).

Dr. Daniel Prince, another consultative examining physician whom the claimant saw after the ALJ decision, noted on April 6, 2009 that she was completely disabled. Dr. Prince did not rely on any x-rays, images, or other laboratory results but completed a physical capacities form. The doctor found that the claimant could not sit or stand for more than fifteen minutes at once and could not walk for more than ten minutes, nor could she stand or walk for more than one hour per day. (R. 544-47).

Finally, on July 23, 2009, Dr. Johnston averred in a questionnaire from claimant's new counsel that she was disabled for life from April 2006 according to the Act's definition. He based this averment on her chronic back pain, which he stated he had treated over thirty-three visits to his office. (R. 566).

## VI. DISCUSSION

The claimant raises quite a number of issues. She alleges in her brief that the ALJ applied numerous legal standards improperly, that substantial evidence did not support his decision at various turns, and that the Appeals Council improperly denied review in light of the new body of evidence. The court resolves each issue in favor of the Commissioner.

9

**A. The Appeals Council Denial of Review was Proper Because the ALJ Decision is Still Supported by Substantial Evidence on the New Record**

The claimant contends that evidence she first submitted to the Appeals Council renders the ALJ decision erroneous. When a claimant presents new evidence to the Appeals Council, a court must review the Commissioner's final decision in light of that evidence. *Ingram*, 496 F.3d at 1262 (11th Cir. 2007). On two occasions the Appeals Council admitted new evidence to the official record, considered it, then declined review. Because the evidence was properly submitted and accepted, this court must review the denial in light of the entire record.

The Appeals Council must admit evidence that is new, material, and chronologically relevant. *Id.* at 1261; *see also Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 Fed. Appx. 236, 238 (11th Cir. 2011). Here, the Appeals Council met this requirement by admitting nineteen new exhibits to the administrative record. It even admitted vast amounts of arguably irrelevant evidence, some of which did not relate to the time period at issue. *See, e.g.*, (R. 385) (birth records). In addition, many of the exhibits are duplicates of evidence that the ALJ already considered. *Compare* (R. 564), *with* (R. 193) (identical MRI report). The Appeals Council thus exercised much caution and did not err in managing claimant's new evidence.

Nor did the Appeals Council improperly deny review. The Appeals Council must affirmatively state that it considered newly admitted evidence before denying review. *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir.1998). The record shows this statement on both of the Appeals Council's denials. (R. 2, 5-6). Essentially, the Act mandates Appeals Council review only if the ALJ's decision is contrary to the weight of the new evidence. 20 C.F.R. § 404.970(b) (2010). The new evidence must "present a reason to doubt the ALJ's conclusion." *Werner*, 2011

10

WL 989824, at *2 (11th Cir. Mar. 11, 2011). No new exhibits present such a doubt.

First, the claimant argues that three doctors' plain statements that she is disabled undermine the ALJ's conclusion. *See* (R. 547), (R. 558), (R. 566). However, the Commissioner reserves the final determination of disability. 20 C.F.R. § 416.927(e)(1)-(3) (2010). Therefore, the conclusory statements of Dr. Johnston, Dr. Prince, and Dr. Wilson bear little weight without objective medical support.

Dr. Johnston's statement that the claimant is disabled does not deserve substantial weight. Although an ALJ must usually give treating physicians' opinions substantial weight, an ALJ may discount their conclusions if objective medical evidence does not accompany them. *Crawford*, 363 F.3d at 1159. Dr. Johnston was claimant's treating physician and his final opinion speaking to disability relates back to the disability period, but his objective evaluation remained consistent across all records. On thirteen new visits between August 20, 2008 and September 18, 2009, Dr. Johnston consistently reported a *moderate* level of pain and no side effects from drugs. *Compare* (R. 529-42), *with* (R. 222). The claimant's treating physician thus provided no changed or contrary *objective* medical information in the additional submission.

The Appeals Council also properly declined to find that the opinions of Dr. Wilson and Dr. Prince undermined the ALJ's conclusion. Again, new evidence that claimants present to the Appeals Council is only relevant if it relates back to the claimed period of disability. *See Ingram*, 496 F.3d at 1261. Drs. Prince and Wilson examined the patient each one time, after the ALJ decision date, and at the special request of claimant's new counsel. *See* (R. 544), (R. 552). The doctors' opinions are not chronologically relevant because neither stated specifically that their findings related back to the claimed disability period.

11

Lastly, the claimant argues that Dr. Wilson's evaluation and psychological evidence from CED Mental Health Center from 1999 and 2006 qualify her for Listings 12.04 and 12.05(C). Listing 12.04 requires a combination of numerous symptoms to satisfy its severity requirement. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.04 (2010). And the claimant has the burden of proving these symptoms. *Barron*, 924 F.2d at 229 (11th Cir. 1991). The claimant has not met her burden under Listing 12.04 because no record evidence demonstrates at least three of the manic syndrome symptoms set forth in 12.04(A)(2). No physician ever suggested that claimant suffered from hyperactivity, pressure of speech, flight of ideas, inflated self-esteem, decreased need for sleep, easy distractability, involvement of activities that had unrealized painful consequences, or hallucinations. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.04(A)(2) (2010). Furthermore, she has not presented evidence suggesting that she has had bipolar disorder or a chronic affective disorder under 12.04(A)(3) and 12.04(C), respectively. In sum, the claimant points to the general standard of the listing but does not elaborate how she satisfies it in accordance with her burden of proof. (Claimant's Br. at 25). Upon a careful review of that standard in light of evidence both old and new, this court finds that substantial evidence supports the conclusion that claimant did not satisfy Listing 12.04.

A claimant may satisfy Listing 12.05(C) if her full scale IQ is between 60 and 70. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05(C) (2010). Yet Dr. Wilson's records indicate a full scale IQ of 85 (R. 557). Even assuming that this new psychological evidence relates to the relevant period, it is not contrary to the weight of the ALJ's decision. Therefore, he properly concluded that the claimant did not satisfy a listing.

**B. The ALJ Properly Applied Each of the Legal Standards that the Claimant Argues He Misapplied**

The ALJ did not err in failing to order a consultative psychological evaluation. If substantial evidence supports the ALJ's decision, he does not err by failing to order a consultative evaluation. *Holladay,* 848 F.2d at 1209-10*; see also Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (holding that ALJ erred in failing to order evaluation because he did not make express factual finding regarding severity of impairment). Here, the ALJ relied on Dr. Johnston's consistent observations of claimant's steady but non-severe generalized anxiety disorder. He made express factual findings by completing a PRTF pursuant to 20 C.F.R. § 416.920a and concluding that her disorder was not severe. (R. 216). Because this substantial evidence supports the ALJ's conclusion that claimant was not disabled, his failure to order a psychological evaluation was not error.

The ALJ also did not err as a matter of law when he dismissed Mr. Scoggins's testimony regarding claimant's RFC. An ALJ must consider the opinion of a vocational expert if no evidence contradicts his opinion. *Lamb*, 847 F.2d at 703. In this case, the ALJ indicated that the treating physician's consistent reports directly contradicted Mr. Scoggins's claims that claimant was disabled because of pain. Additionally, 20 C.F.R. § 416.913(a) limits acceptable medical sources to medical or osteopathic doctors and licensed or certified psychologists. The ALJ rightly found Mr. Scoggins to be within 20 C.F.R. § 416.913(d), which allows discretionary consideration of "other sources" that do not fall within subsection (a), because he lacked curriculum vitae evidence proving that he was an acceptable medical source. Therefore, the ALJ properly found that Mr. Scoggins's opinion did not deserve weight.

Nor did the ALJ pose an improper hypothetical to the vocational expert Dr. Kestler at the hearing. A hypothetical question to a vocational expert must comprehensively describe the claimant's impairments. *Jones*, 190 F.3d at 1229. The claimant contends that the ALJ's three hypotheticals violated this rule by assuming that she could perform sedentary work. However, he took account of her two severe impairments, chronic back pain and GAD, when he found that she could perform sedentary work. He also posed the questions in the alternative and later chose which one actually described her impairments based on his factual findings. This analysis was not erroneous because it both comported with the legal requirement of *Jones* and met the substantial evidence standard.

Finally, the ALJ acted properly when he discounted claimant's testimony about her pain. The Eleventh Circuit standard for pain sufficient to support a finding of disability requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of that condition or (3) a reasonable expectation that the condition is severe. *Wilson*, 284 F.3d at 1225 (11th Cir. 2002). The ALJ found that claimant met the first requirement when he ruled that her back pain constituted a severe impairment, but he did not find that she satisfied the second or third requirement. Even so, a claimant's subjective testimony that she is in pain combined with some medical evidence can support a finding of disability. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). However, in this case the ALJ discredited the claimant's subjective testimony.

When an ALJ discredits a claimant's subjective testimony on pain, he must clearly articulate his reasons for doing so, and they must be supported by substantial evidence. *Dyer*, 395 F.3d at 1210. The ALJ specifically found that Dr. Johnston's opinion, and claimant's own

14

statements to the doctor that her pain was moderate, contradicted her testimony that her pain was severe. *See* (R. 224) ("She states that her pain is 10/10 without medication, 4/10 with."). This contradiction was explicit and constituted substantial evidence for the conclusion that her pain only rose to moderate levels; therefore, the ALJ's decision was correct.

## VII. CONCLUSION

For the reasons stated above, the Appeals Council properly denied review because the evidence before it was not contrary to the ALJ's decision. The ALJ also did not err in his legal analysis. This court will thus AFFIRM the Commissioner's decision and enter a separate order consistent with this memorandum opinion.

DONE and ORDERED this 14th day of June, 2011.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE